## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MICHAEL DEGRAFFINREID,

          Petitioner,              Case Number: 04-CV-73732

v.                                       HON. JOHN CORBETT O'MEARA

BLAINE C. LAFLER,

          Respondent.

_____/

### OPINION AND ORDER DENYING
### PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Michael Degraffinreid, through his attorney, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is incarcerated in violation of his constitutional rights. Petitioner is currently incarcerated at the Saginaw Correctional Facility, in Freeland, Michigan, pursuant to convictions for second-degree murder, two counts of assault with intent to do great bodily harm less than murder, and possession of a firearm during the commission of a felony. For the reasons set forth below, the Court denies the petition.

### I.  Facts

Petitioner's convictions arise from a shooting that occurred on June 15, 1999, near 27017 Florence Street, Inkster, Michigan. Alondrae Davis was killed in the shooting and Larry Abdullah was injured.

Broderick Ward testified that late in the evening on June 14, 1999, he and some friends were sitting at a table outside 27017 Florence Street, when Petitioner drove by in his vehicle. Present with Ward were Larry Abdullah, Curtis Abdullah, Earl Young, Willie Wimberly,

Alondrae Davis, Lekeisha Shelby, Tiffany Shelfy, and Don Davis.  As Petitioner drove by, words were exchanged between the group sitting outside and Petitioner.  A short while later, at approximately 12:30 a.m., on June 15, 1999, Petitioner drove by the home again with his girlfriend, Tiya Manning.  A few of the individuals sitting with Ward yelled lewd comments to Manning.  Petitioner hollered to the crowd, "I'll take y'all heads, disrespecting."  Tr., Vol. II, p. 86.  Petitioner then drove away.  A short while later, Petitioner returned to the Florence Street address.  Someone else was driving the vehicle.  Petitioner began shooting from the back seat, driver's side.  Ward testified that Larry Abdullah was shot in the leg, and that Alondrae Davis was struck in the stomach.

Larry Adbullah testified that he was shot in the leg while outside a home on Florence Street on June 15, 1999.  He identified Petitioner as the shooter.

Dr. Yung Chung, assistant Wayne County medical examiner, testified that he performed an autopsy of Larry Abdullah.  He testified that Abdullah died from multiple gunshot wounds.

Petitioner testified in his own defense.  He testified that, at the time of the shooting he was driving his mother to the police station to pick up his cousin, "Little Ed."

## II.  Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of second-degree murder, two counts of assault with intent to do great bodily harm less than murder, and possession of a firearm during the commission of a felony.  He was sentenced to thirty to fifty years imprisonment for the second-degree murder conviction, and five to ten years imprisonment for each of the assault convictions.  These sentences to be served concurrently with one another and consecutively to a term of two years imprisonment for the felony-firearm

2

conviction.

Petitioner filed a motion for new trial in which he requested a hearing pursuant to <u>People v. Ginther</u>, 390 Mich. 436 (1973).  The trial court denied the motion and found that Petitioner's right to the effective assistance of counsel was not violated.

Petitioner filed an appeal in the Michigan Court of Appeals and a motion to remand.  He raised the following claim in his motion to remand:

> Where the appellant identified an issue sought to be reviewed on appeal an demonstrated that a testimonial record must be made, it was error for the trial court to deny the request for a <u>Ginther</u> hearing.

The Michigan Court of Appeals denied the motion to remand.  <u>People v. Degraffenried</u>,[1] No. 228264 (Mich. Ct. App. 2001).

In his appeal of right, Petitioner presented the following claims to the Michigan Court of Appeals:

I.  Appellant was denied the effective assistance of counsel in the following ways:

    A.  Defense counsel purposefully elicited that a witness was arrested for the crime, asked the police to give him a polygraph test, took the test, and then was not charged with the crime.

    B.  Defense counsel failed to use the examination transcript to impeach the eyewitness Broderick Ward.

    C.  Trial counsel failed to obtain the criminal record of Stephanie Keaton who identified the appellant as the shooter.

    D.  Counsel failed to challenge one juror who had a financial stake in the outcome of the case, removed one of the only jurors to question the

---

[1]  Petitioner's name is spelled "Degraffenried" in state court proceedings. Citations to state court orders in this Opinion reflect that spelling.  Petitioner spelled his name "Degraffinreid," when he filed the pending petition, and the case caption in this Court reflects that spelling.

prosecutor's legal definition, and allowed biased prosecution jurors to remain despite having numerous peremptory challenges left.

E.   Trial counsel failed to challenge the admissibility of the statement on Fifth Amendment grounds and opened the door to let the prosecution offer it in evidence when it had not already done so in its case in chief.

F.   Trial counsel failed to object to speculative questions that attacked the alibi defense and failed to give notice and subpoena a crucial alibi witness.

G.   Trial counsel proved that Willie Wimberly was on the scene at the time of the shooting thus proving Count III for the prosecution.

II.   Where the court excluded the public, including appellant's family, from the courtroom while a stressed-out witness testified, appellant's constitutional right to a public trial was violated.

III.   The trial judge's evidentiary rulings denied appellant the right to present a defense.

IV.   The trial court's preliminary instruction on reasonable doubt denied appellant his right to due process of law and right to a jury trial under both the state and federal constitutions.

V.   As to Count III, the evidence was insufficient to support the verdict and the trial judge erred reversibly in denying the motion for a directed verdict.

The Michigan Court of Appeals affirmed Petitioner's convictions.  People v. Degraffenried, No. 228264 (Mich. Ct. App. Jan. 14, 2003).  Petitioner field a motion for rehearing, which was denied.  People v. Degraffenried, No. 228264 (Mich. Ct. App. Feb. 14, 2003).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented to the Court of Appeals, and the following additional claim:

Where appellant made out more than a plausible claim, and even made out more than a prima facie claim of ineffective assistance of counsel, the trial court erred in failing to grant the motion for a Ginther hearing and the court of appeals erred

4

in failing to remand the case, pursuant to motion, back to the trial court for a
<u>Ginther</u> hearing.

The Michigan Supreme Court denied leave to appeal because it was "not persuaded that
the questions presented should be reviewed by this Court."  <u>People v. Degraffenried</u>, No. 123333
(Mich. June 30, 2003).

Petitioner, through counsel, then filed the pending petition for a writ of habeas corpus,
raising the following claims:

I.      Whether Petitioner's constitutional right to a public trial was violated by the trial
        court not allowing his family and other members of the public to be in the court
        during the testimony of prosecution witness Stephanie Keaton.

II.     Whether Petitioner was deprived of his constitutional right to a fair trial because
        of ineffective assistance of counsel.

III.    Whether Petitioner was deprived of his constitutional right to a fair trial because
        the trial judge gave the jury a defective burden of proof instruction.

IV.     Whether Petitioner was deprived of his constitutional right to a fair trial because
        he was not allowed to present a defense.

V.      Whether Petitioner was deprived of his constitutional right to a fair trial because
        the evidence against him concerning one of the assault charges was insufficient?[2]

---

[2] In his Reply Brief in Support of Petition for Writ of Habeas Corpus, Petitioner presents
a claim not presented in his habeas corpus petition: that the trial court denied him his right to
present a defense when it failed to instruct the jury on manslaughter, although such an instruction
was not requested by defense counsel.  A claim for habeas corpus relief presented for the first
time in a reply brief rather than in a petition is not properly before  the district court.  <u>Tyler v.
Mitchell</u>, 416 F.3d 500, 504 (6th Cir. 2005), *cert. denied* 126 S. Ct. 1774 (Apr. 17, 2006); *see
also* <u>Hubbert v. Renico</u>, 2005 WL 2173612, * 5 n.1 (E.D. Mich. Sept. 7, 2005).  The Court,
therefore, declines to address this claim as it is not properly before the Court.

### III.  Discussion

### A.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts

reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
> (1)      resulted in a decision that was contrary to, or involved an
>           unreasonable application of, clearly established Federal law, as
>           determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable
>           determination of the facts in light of the evidence presented in the
>           State court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a

petitioner's claims unless the state court's decision was contrary to or involved an unreasonable

application of clearly established federal law.  Franklin v. Francis, 144 F.3d 429 (6th Cir. 1998).

Additionally, this court must presume the correctness of state court factual determinations.  28

U.S.C. § 2254(e)(1)[3]; see also Cremeans v. Chapleau, 62 F.3d 167, 169 (6th Cir. 1995) ("We give

complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary

to" clause as follows:

---

[3]  28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State
> court, a determination of a factual issue made by a State court shall
> be presumed to be correct.

6

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case."  Id. at 409.  The Court defined "unreasonable application" as follows:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .

[A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.

Id. at 410-11.

### B. Right to a Public Trial

In his first claim for habeas corpus relief, Petitioner claims that his constitutional right to a public trial was violated when the trial court excluded family and other members of the public from the courtroom during the testimony of prosecution witness Stephanie Keaton.

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall

enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The right is applicable to the states through the Fourteenth Amendment. <u>Duncan v. Louisiana</u>, 391 U.S. 145, 148-49 (1968).

"The central aim of a criminal proceeding must be to try the accused fairly." <u>Waller v. Georgia</u>, 467 U.S. 39, 46 (1984). The public-trial guarantee was created to further that aim. <u>Id.</u>, *citing* <u>Gannett Co. V. DePasquale</u>, 443 U.S. 368, 380 (1979). A public trial helps to ensure that judge and prosecutor carry out their duties responsibly, encourages witnesses to come forward, and discourages perjury. <u>Id</u>. The violation of the constitutional right to a public trial is a structural trial error, not subject to the harmless error analysis. <u>Id.</u> at 49-50, n.9.

A closure does not violate the Sixth Amendment where: (1) the party seeking to close the courtroom advances an overriding interest that is likely to be prejudiced by an open courtroom; (2) the party seeking closure demonstrates that the closure is no broader than necessary to protect that interest; (3) the trial court considers reasonable alternatives to closing the proceeding; and (4) the trial court makes findings adequate to support the closure. <u>Id.</u> at 48. A party may waive the Sixth Amendment right to a public trial. *See* <u>Vincent v. Bennett</u>, 54 Fed. Appx. 714, 715 (2d Cir. 2003); <u>Martineau v. Perrin</u>, 601 F.2d 1196, 1200-01 (1st Cir. 1979).

The Michigan Court of Appeals held that Petitioner waived his right to a public trial because counsel failed to object to the courtroom closure. <u>Degraffenried</u>, slip op. at 4. The state court's finding that counsel consented to the courtroom closure was not an erroneous factual finding, nor was it contrary to or an unreasonable application of Supreme Court precedent. Therefore, the Court denies habeas relief on this claim.

8

## C.  Alleged Ineffective Assistance of Counsel

Petitioner next asserts several claims of ineffective assistance of counsel.  Petitioner alleges that he was denied his constitutional right to the effective assistance of counsel on the grounds that counsel: (1) elicited testimony regarding polygraph tests; (2) failed to impeach prosecution witness Broderick Ward; (3) failed to obtain the criminal record of Stephanie Keaton; (4) failed to challenge jurors; (5) failed to challenge the admissibility of Petitioner's statement and opened the door for its use by the prosecutor; (6) failed to object to cross-examination of alibi witnesses and failed to subpoena crucial alibi witness; and (7) aided the prosecution in proving the crime of assault with intent to do great bodily harm as to Willie Wimberly.

As an initial matter, Petitioner argues that the Michigan Court of Appeals' disposition of Petitioner's ineffective assistance of counsel claims applied the wrong standard.  The standard applicable to an ineffective assistance of counsel claim is that set forth in Strickland v. Washington, 466 U.S. 668 (1984).

In Strickland, the Supreme Court held that, to establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  A petitioner may show that counsel's performance was deficient by establishing that counsel's performance was "outside the wide range of professionally competent assistance."  Id. at 689.  This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  Id. at 687.  To satisfy the prejudice prong, a petitioner must show that "there is a

9

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "[T]he focus should be on whether the result of the trial was 'fundamentally unfair or unreliable.'" Tinsley v. Million, 399 F.3d 796, 802 (6th Cir. 2005), *quoting* Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

The Michigan Court of Appeals, although not citing Strickland, correctly stated the Strickland standard and relied on a Michigan case which specifically cited Strickland. Therefore, Petitioner's claim that the state court applied the incorrect standard to his ineffective assistance of counsel claims is meritless. The Court now turns to the substance of each of those claims.

**1.**

Petitioner claims that his attorney was ineffective in eliciting testimony that Jerry Hunter took and passed a polygraph test and that Petitioner did not take one. The Michigan Court of Appeals held that defense counsel did not purposefully elicit testimony from Hunter regarding the polygraph test. Further, the court of appeals concluded that, once the testimony was elicited, defense counsel attempted to show that the police threatened or coerced people into giving false testimony. Degraffenried, slip op. at 2. After reviewing Hunter's trial testimony, the Court concludes that the court of appeals' holding was not contrary to or an unreasonable application of Supreme Court precedent. The reference to the polygraph test was brief and isolated. Hunter did not testify that he "passed" the polygraph test, only that he took one. Defense counsel's examination of Hunter highlighted possible coercive police conduct. In addition, even assuming that counsel was deficient in eliciting this testimony, Petitioner has failed to show that there is a

10

reasonable probability that, but for this testimony, the result of the proceeding would have been different.

## 2.

Second, Petitioner claims that his attorney was ineffective in failing to impeach Broderick Ward with his preliminary examination testimony.  The Michigan Court of Appeals held that, while there may have been some inconsistencies between Ward's preliminary examination and trial testimony, the inconsistencies were minor and insufficient to impact the outcome of the trial.  In addition, the court of appeals held that defense counsel used other means to discredit Ward's testimony.  Other than asserting that the Michigan Court of Appeals' opinion was incorrect, Petitioner provides no argument in support of his claim that the state court's opinion warrants habeas relief.  This Court finds that the state court's holding regarding the relative importance of the inconsistencies in Ward's testimony and impact of counsel's failure to highlight these inconsistences is supported by the record.  The Court concludes that the state court's holding was not contrary to or an unreasonable application of Strickland.

## 3.

Petitioner next claims that his attorney was ineffective in failing to cross-examine witness Stephanie Keaton regarding her prior convictions involving elements of dishonesty or false statements.  The Michigan Court of Appeals held that Petitioner failed to show how this alleged omission may have impacted the outcome of the trial when other witnesses also identified Petitioner as the shooter.  While this Court believes that counsel should have cross-examined Keaton regarding her prior convictions, Petitioner has failed to establish that, had counsel cross-examined on this subject  "there is a reasonable probability that . . .  the result of the proceeding

would have been different." Strickland, 466 U.S. at 694.

**4.**

Petitioner claims that counsel was ineffective in failing to move to dismiss one juror for cause and in failing to exercise unused peremptory challenges as to three jurors whom he claims favored the prosecution. The Michigan Court of Appeals, while denying this claim, failed to provide any meaningful analysis of the claim apart from setting forth the general rule that jurors are presumed to be competent and impartial. Where a state court, although deciding a claim, does not offer some explanation of its decision, a federal court must conduct an independent review of the state court's decision. This independent review requires the federal court to "review the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." Harris v. Stovall, 212 F.3d 940, 943 (6th Cir. 2000). "Yet, any independent review that is conducted must remain deferential to the state court's decision and cannot amount to a 'full *de novo* review of the claims.'" Joshua v. DeWitt, 341 F.3d 430, 447-48 (6th Cir. 2003), *quoting* Harris, 212 F.3d at 943. Because the state court failed to offer any explanation for its ruling denying Petitioner's shackling claim, this Court will proceed with an independent review of this claim "'through the lens of § 2254(d).'" Id. at 448, *quoting* Price v. Vincent, 538 U.S. 634, 639 (2003).

Petitioner claims that Juror Holt had a financial interest in the outcome of the trial because she was married to a man who owned Holt Towing Company. Holt Towing Company had a contract with the Inkster Police Department to tow vehicles. Petitioner argues that this gave her a financial interest in the outcome of the trial because, Petitioner posits, if she found

12

him not guilty it would endanger her husband's contract with the police department. Juror Holt was questioned regarding this relationship and stated that it would not impact her ability to be impartial. The Court finds the financial relationship too attenuated to support a conclusion that Juror Holt had a financial stake in the outcome of the trial and, therefore, concludes that counsel was not ineffective in failing to move to dismiss her for cause.

Petitioner claims that his attorney was ineffective in failing to use peremptory challenges to excuse Jurors Truden, Schuyler, and Lewis. Petitioner states that Juror Truden should have been challenged based upon his occupation. Juror Truden was a computer security analyst, which involved investigating complaints from companies concerning their employees' use of company computers for illegal purposes. If Juror Truden found evidence of illegal activity he would turn it over to law enforcement. Petitioner argues that Juror Truden, therefore, functionally acted as a prosecutor and could not be impartial in Petitioner's case. Petitioner argues that Juror Schuyler should have been challenged because she had both a brother and a sister who had been convicted of felonies and, during voir dire, she stated that her sister should have received a greater punishment than that which was imposed. Finally, Petitioner argues that counsel should have used a peremptory challenge to excuse Juror Lewis because her husband practiced criminal law.

Petitioner's objections to Jurors Truden, Schuyler, and Lewis' presence on the jury are entirely speculative. He points to no specific indications that any of these jurors were not impartial. He has, therefore, failed to show that his attorney was ineffective in failing to use peremptory challenges to excuse them.

**5.**

13

Petitioner claims that trial counsel was ineffective in failing to move to suppress the admissibility of his statement to police and in opening the door on cross-examination for the prosecution to admit the statement when it did not do so in its case-in-chief.

The Michigan Court of Appeals held that counsel was not ineffective in failing to move to suppress either of Petitioner's two statements to police. The Michigan Court of Appeals held that Petitioner admitted at trial that he gave his first statement voluntarily. The Michigan Court of Appeals further held that Petitioner's second statement to police was not incriminating and counsel, therefore, did not need to challenge its admission. Petitioner has not challenged either of these findings in his habeas petition. Thus, the Court finds that the court of appeals' decision was not contrary to or an unreasonable application of Supreme Court precedent.

**6.**

Petitioner asserts that trial counsel was ineffective in failing to object to improper, speculative questions posed to Detective Hines regarding Wilma McDaniel's alibi testimony. McDaniel had testified that Petitioner drove her to the Inkster Police Department at approximately 12:45 a.m. on June 15, 1999, so that she could pick up her grandson, "Little Ed," who had been arrested. When cross-examining Detective Hines, the prosecution asked Detective Hines whether he would have made a written notation regarding McDaniel's time line testimony if she had discussed the time line with him.

The Michigan Court of Appeals found that, because McDaniel testified that she never discussed the specific time line of events with Detective Hines, Detective Hines' response to the speculative question did not prejudice Petitioner. Therefore, the state court held that counsel's failure to object was not ineffective. The Court finds this conclusion was not contrary to or an

14

unreasonable application of <u>Strickland</u>.

Petitioner also claims counsel was ineffective in failing to subpoena Officer Kelly to corroborate Petitioner's alibi.  Petitioner claims that Officer Kelly would have established the time that McDaniel came to the police station.  Officer Kelly was the arresting and releasing officer for "Little Ed."  The Michigan Court of Appeals held that Petitioner was not prejudiced by his attorney's failure to call Officer Kelly because Petitioner did not establish that Officer Kelly would have testified favorably to his defense.  Officer Kelly's police report indicating that "Little Ed" was released to his grandmother does not state the time of release.  Also, because Petitioner remained in the car while McDaniel entered the police station, Officer Kelly could not have testified to his presence.  Thus, the Court finds that the state court's holding that counsel was not ineffective in failing to call Officer Kelly was not contrary to or an unreasonable application of <u>Strickland</u>.

**7.**

Finally, Petitioner claims that his attorney was ineffective because he elicited the only testimony proving Count III, the assault upon Willie Wimberly.  Petitioner argues that the prosecution failed to adduce any evidence identifying Willie Wimberly as a victim.  He maintains that the only evidence placing Wimberly at the scene was elicited by defense counsel when he asked Broderick Ward who was present at the time of the shooting.

The Michigan Court of Appeals held that defense counsel was not ineffective because Ward, on direct examination, twice testified that Wimberly was part of the group assembled at the house on Florence Street around the time of the shooting.  <u>Degraffenried</u>, slip op. at 3. Petitioner fails to show that this finding was contrary to or an unreasonable application of

15

Supreme Court precedent.

### D.  Jury Instruction Claim

Petitioner next claims that the trial court's preliminary jury instruction on reasonable doubt deprived Petitioner of his right to due process of law and right to a jury trial.

Generally, a claim that a state trial judge gave erroneous jury instructions is not cognizable in a federal habeas action unless the instruction "'so infected the entire trial that the resulting conviction violates due process.'"  Estelle v. McGuire, 502 U.S. 62, 72 (1991), *quoting* Cupp v. Naughten, 414 U.S. 141, 147 (1973).  "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned', but that it violated some [constitutional] right.'"  Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).   Further, "[i]t is well established that the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record."  Estelle v. McGuire, 502 U.S. 62, 72 (1991), *quoting* Cupp v. Naughten, 414 U.S. 141, 147 (1973).

"The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course."  Victor v. Nebraska, 511 U.S. 1, 5 (1994). "[T]he Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof."  Id.  Instead, "'taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.'"  Id., *quoting* Holland v. United States, 348 U.S. 121, 140 (1954).

During *voir dire*, the trial court judge instructed prospective jurors in the following manner regarding reasonable doubt:

16

Juries will essentially decide two types of cases. They will decide criminal cases and they will decide civil cases.

Mr. Hall [a prospective juror] served as a juror in a civil case, a personal injury case. Civil cases are where one party or one individual is suing another individual or one company is suing another company for breach of contract, for personal injuries. Those are the types of civil cases that a jury will also sit on and decide.

. . .

Now, in Mr. Hall's case, one side, in a civil case, one side wins if they have more evidence in their favor than evidence against it. The side in a civil case which has fifty-one percent of the evidence in its favor wins. . . .

Now, a criminal case is different. It is different in terms of the burden of proof.

In a criminal case, Mr. Villegas on behalf of the people of the state of Michigan, must prove each element of the crime to you beyond a reasonable doubt.

There are four different charges. Each one of those charges is made up of elements. Mr. Villegas must prove each element of the four different charges to you beyond a reasonable doubt.

We don't know how much that is, we can't quantify exactly beyond a reasonable doubt, but it is substantially more than fifty-one percent.

Trial, Vol. I, pp. 63-64.

The trial court judge proceeded to read Michigan's standard jury instruction for reasonable doubt. Petitioner does not allege that the standard jury instruction is improper. At the close of trial, the trial court again read to the jury Michigan's standard reasonable doubt instruction.

Respondent argues that this claim is procedurally defaulted. The doctrine of procedural default provides:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the

17

default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner files an untimely appeal, Coleman, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict.  United States v. Frady, 456 U.S. 152, 167-69 (1982); Simpson v. Sparkman, 94 F.3d 199, 202 (6th Cir. 1996).  Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent."  Rust, 17 F.3d at 162; Murray v. Carrier, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule.  Warner v. United States, 975 F.2d 1207, 1213-14 (6th Cir. 1992), *cert. denied*, 507 U.S. 932 (1993).  Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim.  Coleman, 501 U.S. at 729-30.

If the last state court from which the petitioner sought review affirmed the conviction both on the merits, and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition.  Rust, 17 F.3d at 161.  If the last state court judgment contains no reasoning,

but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

This Court begins its analysis of whether Petitioner's claim is procedurally defaulted by looking to the last reasoned state court judgment denying Petitioner's claims. *See* Coleman, 501 U.S. at 729-30. The last state court to issue a reasoned opinion addressing Petitioner's claim, the Michigan Court of Appeals, held that Petitioner failed to preserve for review his jury instruction claim because no contemporaneous objection was made at trial. The state court's reliance on Petitioner's failure to object at trial was an adequate and independent state ground on which to decline to review Petitioner's claim. *See* Engle v. Isaac, 456 U.S. 107, 110 (1982). This Court, therefore, may not review Petitioner's claim unless he has established cause for the default and actual prejudice as a result of the alleged violation of federal law or unless he has demonstrated that failure to consider these claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750.

Petitioner fails to assert cause to excuse his default. Therefore, this claims is barred from review unless Petitioner can establish that a constitutional error resulted in a fundamental miscarriage of justice. Schlup v. Delo, 513 U.S. 298 (1995).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. Schlup, 513 U.S. at 321. Thus, Petitioner must assert a constitutional error along with a claim of innocence. To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the

petitioner guilty beyond a reasonable doubt." Id. at 327. The Court further explained this standard as follows:

> The . . . standard is intended to focus the inquiry on actual innocence.
>
> . . . .
>
> . . . [A]ctual innocence does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

Id. (internal quotation omitted).

Applying the Schlup standard of actual innocence to Petitioner's case, Petitioner has presented no new evidence, in light of which, no juror, acting reasonably, would have found him guilty beyond a reasonable doubt. Thus, this claim is procedurally defaulted.

Moreover, even if the claim were not procedurally defaulted, Petitioner would not be entitled to habeas relief because the instructions taken as a whole correctly conveyed the concept of reasonable doubt to the jury. *See* Victor, 511 U.S. at 5.

### E. Right to Present a Defense

Petitioner alleges entitlement to habeas relief because the trial court deprived him of his right to present a defense when it refused his request to present Officer Kelly as an alibi witness and excluded testimony that the victim, Alondrae Davis had a bag of crack in his hand when he was killed.

The right of a defendant to present a defense has long been recognized as "a fundamental

20

element of due process of law." Washington v. State, 388 U.S. 14, 19 (1967).  It is one of the

"minimum essentials of a fair trial." Chambers v. Mississippi, 410 U.S. 284, 294 (1973).  The

Supreme Court has described the "most basic ingredients of due process of law" as follows:

> "A person's right to reasonable notice of a charge against him, and an opportunity
> to be heard in his defense -- a right to his day in court -- are basic in our system of
> jurisprudence; and these rights include, as a minimum, a right to examine the
> witnesses against him, to offer testimony, and to be represented by counsel."

Washington v. Texas, 388 U.S. 14, 18 (1967) (emphasis supplied), *quoting* In re Oliver, 333 U.S.

257 (1948).

> Further, the Supreme Court described the right to present a defense as follows:

> The right to offer testimony of witnesses, and to compel their attendance, if
> necessary, is in plain terms the right to present a defense, the right to present the
> defendant's version of the facts as well as the prosecution's to the jury so it may
> decide where the truth lies.  Just as an accused has the right to confront the
> prosecution's witnesses for the purpose of challenging their testimony, he has the
> right to present his own witnesses to establish a defense.  This right is a
> fundamental element of due process of law.

Id.

This Court recognizes that, while the right to present a defense is a fundamental tenet of

due process, "a defendant's right to present evidence is not unlimited, but rather is subject to

reasonable restrictions." United States v. Scheffer, 118 S. Ct. 1261, 1264 (1998).  Indeed, "[a]

defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate

interests in the criminal trial process." Id. (internal quotations omitted).  However, the exclusion

of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused." Id.,

*citing* Rock v. Arkansas, 483 U.S. 44, 58 (1987); *see also* Chambers v. Mississippi, 410 U.S.

283, 302 (1973); Washington v. Texas, 388 U.S. 14, 22-23 (1967).

In determining whether the exclusion of evidence infringes upon a weighty interest of the

21

accused, the court's role is not to determine whether the excluded evidence would have caused the jury to reach a different result.  Davis v. Alaska, 415 U.S. 300, 317 (1973).  Instead, the question is whether the defendant was afforded "'a meaningful opportunity to present a complete defense.'"  Crane v. Kentucky, 476 U.S. 683, 690 (1986), *quoting* California v. Trombetta, 467 U.S. 479, 485 (1984).  The prosecutor's case must "encounter and 'survive the crucible of meaningful adversarial testing.'"  Id. at 690-691 (1984), *quoting* United States v. Cronic, 466 U.S. 648, 656 (1984).

First, the Michigan Court of Appeals concluded that the trial court did not deprive him of the right to present a defense with respect to Officer Kelly because the trial court did not prevent Officer Kelly from testifying.  Rather, Officer Kelly did not testify because he failed to appear and was not subpoenaed.  Petitioner has not shown that the court of appeals' factual finding in this regard was clearly erroneous.  Thus, the Court finds that Petitioner was not deprived of his right to present a defense.

Second, the Michigan Court of Appeals held that the trial court did not err in excluding the evidence that the victim was holding crack cocaine because Petitioner failed to show that it was relevant.  The state court rejected Petitioner's conclusory assertion that the crack cocaine would have shown that the victim was a drug dealer or the target of rival drug dealers.  Petitioner fails to show that the trial court's evidentiary ruling was an unreasonable restriction on his right to present evidence.  Therefore, he is not entitled to habeas relief on this claim.

22

**F.  Sufficiency of the Evidence**

Finally, Petitioner alleges that insufficient evidence was presented to sustain the

conviction of assault on Willie Wimberly.  He also alleges that his Sixth Amendment right to

confront the witnesses against him was violated because Willie Wimberly did not testify.

Petitioner also claims that Willie Wimberly's failure to testify violated his rights under the

Confrontation Clause.

In Jackson v. Virginia, 443 U.S. 307 (1979), the Supreme Court established that the

standard of review for a sufficiency of the evidence challenge must focus on whether "after

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319

(emphasis in original).  Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether

the state court's application of the Jackson standard was contrary to or an unreasonable

application of Supreme Court precedent.  In making this determination, this Court must afford

the state court's findings of fact a presumption of correctness unless it is established by clear and

convincing evidence that the factual determination in the state court was erroneous.  28 U.S.C. §

2254(e)(1); West v. Seabold, 73 F.3d 81, 83 (6th Cir. 1996), *cert. denied*, 116 S. Ct. 2569 (1996).

The last state court to issue a reasoned opinion regarding Petitioner's sufficiency of the

evidence claim, the Michigan Court of Appeals, stated, in relevant part:

> In reviewing a sufficiency of the evidence claim, we view the evidence in the
> light most favorable to the prosecution and determine whether a rational trier of
> fact could find that the essential elements of the crime were proven beyond a
> reasonable doubt.  People v. Johnson, 460 Mich. 720, 723; 597 N.W.2d 73
> (1999).  "[C]ircumstantial evidence and reasonable inferences arising from that
> evidence can constitute satisfactory proof of the elements of a crime."  People v.
> Lee, 243 Mich. App. 163, 167-68; 622 N.W.2d 71 (2000). . . .

23

Defendant contends that there was no evidence that Mr. Wimberly was present
during the shooting.  However, a review of the record shows that Mr. Ward
repeatedly stated that Mr. Wimberly was a member of the group assembled at the
house on Florence Street. He specifically mentioned that Mr. Wimberly was there
half an hour before the shooting and did not testify that Mr. Wimberly left before
the shooting occurred.  On cross-examination, Mr. Ward identified Mr. Wimberly
as being with the group during the shooting.  A reasonable juror could have
inferred from this testimony that Mr. Wimberly was with the group during the
shooting.  Consequently, there was sufficient evidence to convict defendant of
this charge.

Degraffinreid, slip op. at 5.

While not citing Jackson, the Court of Appeals cited cases which clearly incorporated the

Jackson standard.  The Court of Appeals explained and supported its conclusion that a rational

trier of fact could have found Petitioner guilty beyond a reasonable doubt.  Petitioner has not

presented any new evidence to show that the state court's findings of fact were erroneous.  A

federal court's inquiry on habeas review, "does not require [the] court to ask itself whether it

believes that the evidence at the trial established guilt beyond a reasonable doubt." Jackson, 443

U.S. at 318-19.  Therefore, according the state court's factual findings a presumption of

correctness, see 28 U.S.C. § 2254(e)(1), this Court concludes that the state court of appeals'

decision that all of the elements of the crime were satisfied did not "result[] in a decision that . . .

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

Petitioner's claim that he was denied his right of confrontation because Wimberly did not

testify is also meritless.  The Confrontation Clause of the Sixth Amendment provides: "In all

criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses

against him." U.S. Const. amend. VI.  Thus, out-of-court statements that are testimonial in

nature may not be offered in evidence to establish the guilt of the accused unless the defendant

24

had an opportunity to cross-examine the declarant.  <u>Crawford v. Washington</u>, 541 U.S. 36

(2004).  No testimonial statements by Wimberly were offered at trial.  Therefore, Petitioner's

right of confrontation was not violated.  *Accord* <u>Bradberry v. Stewart</u>, 133 Fed. Appx. 374, 375

(9th Cir. 2005).

**IV.**

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus

is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.


                                        S/JOHN CORBETT O'MEARA
                                        UNITED STATES DISTRICT JUDGE

DATED: July 31, 2006


<u>Certificate of Service</u>

I hereby certify that a copy of this Opinion and Order was served upon the parties of
record electronically and/or by U. S. mail on July 31, 2006.

                                        s/William Barkholz
                                        Deputy Clerk


25
